**STATE of Tennessee, Appellee,**

v.

**Shannon Renee DAVIS, Appellant.**

Supreme Court of Tennessee,
at Knoxville.

March 10, 1997.

R. Russell Mattocks, Morristown, for Appellant.

Charles W. Burson, Attorney General and Reporter, Michael E. Moore, Solicitor General, Michael W. Catalano, Associate Solicitor General, Nashville, C. Berkeley Bell, Jr., District Attorney General, John Douglas Godbee, Assistant District Attorney, Rogersville, for Appellee.

## OPINION

ANDERSON, Justice.

We granted the appeal in this case to answer a question of first impression: whether the trial court had the statutory authority to order the defendant to pay restitution in addition to ordering a sentence of incarceration for the offense of vandalism, and to determine whether the trial court erred in denying the defendant probation.

After the jury convicted the defendant of vandalism, the trial court denied probation, sentenced the defendant to serve two years and one day, and ordered the payment of restitution to the victim of $625. The trial court found that the statutory presumption in favor of probation for this first offense was overcome by the evidence that confinement was necessary to avoid depreciating the seriousness of the offense and to provide an effective deterrent to others likely to commit similar offenses.

On appeal, the Court of Criminal Appeals held that the trial court correctly denied probation, but that the trial court lacked the statutory authority to impose restitution with a sentence of incarceration. We agree and affirm for the reasons discussed below.

### BACKGROUND

In August of 1992, contract negotiations failed between Assured Casting, a manufacturing facility in Rogersville, Tennessee, and its labor union. The union voted to strike and established a picket line. Some workers, including the victim Regina Kleeper, decided to cross the picket line and continue working. On August 15, 1992, when Regina Kleeper crossed the picket line, the defendant Shannon Davis and Ann Lawson told her that

"they would get even with [her] one way or the other." [1]

On September 3, 1992, at approximately 3:30 a.m., David Ogle, Regina Kleeper's neighbor, was on his front porch preparing to go to work. He saw three individuals "messing around" with an automobile belonging to Regina Kleeper and her husband, Ronald. Ogle saw the individuals throw something on the car and he heard what sounded like keys hitting the concrete. A street light gave Ogle a clear view of two of the individuals at the scene—Shannon Davis and Ann Lawson. The third person was never identified.

Later that morning Ronald Kleeper noticed a "substance" on their car. When he attempted to wash it off, he discovered that the substance had eaten the paint down to the base metal. Later in the day, he returned home and discovered that their daughter's bedroom window had been broken and that a quantity of roofing nails had been scattered over their driveway. At trial, Kleeper estimated that the damage to the car and the bedroom window amounted to $1,200.

The defendant and Lawson testified that they were working the picket line at the time of the offenses. Their story was supported by several fellow strikers.

At trial, the jury convicted Shannon Davis of vandalism,[2] a class D felony and recommended that she pay a fine of $625 and also pay restitution to the victim of $625. At the sentencing hearing, the trial court sentenced the defendant as a Range I, standard offender to two years and one day in the Department of Correction,[3] approved the amount of the fine, and ordered the payment of $625 in restitution. The trial court denied probation.

On appeal, the Court of Criminal Appeals affirmed the trial court's denial of probation but found that the order of restitution tied to a sentence of incarceration was plain error. We granted this appeal to determine whether probation should have been denied and whether there is statutory authority to require restitution with a sentence of incarceration.

## PROBATION

■ The task of an appellate court when reviewing the length, range, or manner of service of a sentence, including the grant or denial of probation, is to conduct a *de novo* review with a presumption that the lower court was correct. Tenn.Code Ann. § 40–35–401(d)(1990). This presumption is conditioned "upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991).

We analyze the trial court's action on probation by first reviewing the factors the trial court must consider in imposing a sentence. A trial court must consider the evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, argument of counsel, the nature and circumstances of the offense, any mitigating or enhancing factors, statements made by the defendant, and the defendant's potential for rehabilitation. Moreover, the trial court must consider the sentencing purposes and considerations set forth in the Sentencing Act. Tenn.Code Ann. § 40–35–102, –103, & –210 (1990).

Although probation "must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." Tenn.Code Ann. § 40–35–303(b) (1990) (Sentencing Commission Comments). Instead, the court must begin its sentencing determination by reviewing the purposes of sentencing set forth in Tenn.Code Ann. § 40–35–102, which include:

(5) In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons commit-

---

1. Ann Lawson was a co-defendant in this case. She was convicted but did not appeal.

2. Tenn.Code Ann. § 39–17–408 (1992). Vandalism is punished under the provisions for grading theft. Thus, the classification for an act of vandalism causing damage totaling more than $1,000 but less than $10,000, is a class D felony. *See* Tenn.Code Ann. § 39–14–105(3) (1992).

3. The applicable range of punishment was two to four years. Tenn.Code Ann. § 40–35–112(a)(4) (1991).

ting the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration; and

(6) A defendant who does not fall within the parameters of subdivision (5) and is an especially mitigated or standard offender convicted of a class C, D or E felony is presumed to be a favorable candidate for alternative sentencing *in the absence of evidence to the contrary.*

Tenn.Code Ann. § 40–35–102(5) & (6)(emphasis added). As we discussed in *State v. Ashby, supra,* "evidence to the contrary" may be found in applying the considerations that govern sentences involving confinement, which are set forth in Tenn.Code Ann. § 40–35–103(1):

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

*See State v. Ashby,* 823 S.W.2d at 169.

Here, the trial court reviewed the purposes and considerations set forth in these statutory provisions. The defendant, as a class D felon, was entitled to the presumption of alternative sentencing pursuant to Tenn. Code Ann. § 40–35–102(6). In denying probation, however, the court emphasized that confinement was necessary "to avoid depreciating the seriousness of the offense" and necessary to provide an "effective deterrent to others likely to commit similar offenses." *See* Tenn.Code Ann. § 40–35–103(1)(B).

Whether a sentence will deter others likely to commit similar criminal offenses is a proper sentencing consideration and a proper basis upon which to deny probation or alternative sentencing. The Sentencing Act clearly states that "[p]unishment shall be imposed to prevent crime and promote respect for the law by ... [p]roviding a general deterrent to those likely to violate the criminal laws of this state." Tenn.Code Ann. § 40–35–102(3)(A).[4]

Because there is a degree of deterrence uniformly present in every case, however, the significance of this factor "varies widely with the class of offense and the facts of each case." *State v. Michael,* 629 S.W.2d 13, 14–15 (Tenn.1982). Thus, a "finding of deterrence cannot be conclusory only but must be supported by proof." *State v. Ashby,* 823 S.W.2d at 170.

The evidence in this record supports the trial court's reliance on the deterrence factor. The trial judge made his specific findings of deterrence in the context of a labor dispute in the community which had escalated into criminal acts. Specifically, the defendant threatened Regina Kleeper in a confrontation as she crossed the picket line and then later committed acts of vandalism against her in the early morning hours. Moreover, the record indicates that at least one individual participating in the offenses went unpunished. Accordingly, there is evidence in the record to support the trial court's finding that denying probation was necessary to deter others from committing similar offenses. Tenn. Code Ann. § 40–35–103(1)(B).

Moreover, while the acts of vandalism, by definition, did not directly involve violence to another person, the record supports the trial court's finding that denying probation avoided depreciating the seriousness of the offense. Tenn.Code Ann. § 40–35–103(1)(B). In denying probation to the defendant, the trial court considered the appropriate factors, applied the purposes and principles of sentencing, and complied with our holding in

---

**4.** The deterrence factor has been universally viewed as a legitimate purpose of sentencing in criminal cases. *See* Miller, *Purposes of Sentencing,* 66 So.Cal.L.Rev. 43 (1992); Von Hirsch, *Recent Trends in American Criminal Sentencing Theory,* 42 Md.L.Rev. 6 (1983). One commenta-

tor has defined general deterrence as imposing "punishment as a symbolic act to communicate the threat of punishment to other offenders." Blumstein, *The Search for the Elusive Common "Principle",* 82 N.W.L.Rev. 43, 44 (1987).

*State v. Ashby, supra.* As a result, the trial court did not abuse its discretion in denying probation.

### RESTITUTION

██ The issue of whether the trial court had the statutory authority to order restitution along with a sentence of incarceration is a question of first impression in this State.[5] Since it is a question of law, our review is *de novo* with no presumption of correctness. *Beare Co. v. Tenn. Dept. of Revenue,* 858 S.W.2d 906, 907 (Tenn.1993).

Encouraging defendants to make restitution to victims where appropriate is one of the purposes of the Criminal Sentencing Reform Act of 1989. *See* Tenn.Code Ann. § 40–35–102(3)(D). With regard to the question presented in this case, however, we observe that the Sentencing Act authorizes a number of sentencing alternatives, including a fine, confinement, work release, probation, and community based alternatives; but with respect to restitution, it only provides as follows:

> (2) A sentence of confinement *which is suspended upon a term of probation supervision which may include community service or restitution, or both; . . . .*

Tenn.Code Ann. § 40–35–104(c)(2)(1990). Accordingly, there is no provision expressly authorizing confinement in the Department of Correction along with an order of restitution.[6]

Moreover, two other statutes are more relevant and specific. First, Tenn.Code Ann. § 40–35–304(a) provides in part that "a sentencing court may direct a defendant to make restitution to the victim of the offense as a *condition of probation.*" (Emphasis added). Similarly, Tenn.Code Ann. § 40–35–303(d)(10) provides:

> (d) Whenever a court sentences an offender to *supervised probation,* the court shall specify the terms of the supervision and may require the offender to comply with certain conditions which may include, but are not limited to:
>
> . . . .
>
> (10) Make appropriate and reasonable restitution to the victim or the family of the victim involved pursuant to § 40–35–304.

Tenn.Code Ann. § 40–35–303(d)(10)(1990) (emphasis added).

This Court's role in construing these statutes is to determine and to "give effect to the legislature's intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State,* 908 S.W.2d 923, 926 (Tenn.1995). We must determine the legislative intent from the plain language of the statute "read in the context of the entire statute, without any forced or subtle construction which would extend or limit its meaning." *National Gas Distributors, Inc. v. State,* 804 S.W.2d 66, 67 (Tenn.1991).

Another aid to determination of legislative intent is the application of rules of statutory construction, one of which provides: "[I]t is a rule of statutory construction that . . . the mention of one subject in a statute means the exclusion of other subjects that are not mentioned." *State v. Harkins,* 811 S.W.2d 79, 81 (Tenn.1991). To illustrate, restitution is regarded as a condition of probation in Tenn. Code Ann. §§ 40–35–304(a) and 40–35–303(d)(10). It follows that restitution may properly be made part of a sentence involving probation but may not be tied to a sentence of incarceration because incarceration is not mentioned in these statutes. The Leg-

---

**5.** The Court of Criminal Appeals has affirmed judgments in which an order of restitution accompanied a custodial sentence; however, the propriety of such a sentence was not raised as an issue in those cases. *See, e.g., State v. Anthony Horner,* No. 01C01–9406–CC–00225, 1995 WL 124290 (Tenn.Crim.App., March 22, 1995, Nashville); *State v. Andrew Earls,* No. 03C01–9202–CR–00052, 1992 WL 368625 (Tenn.Crim.App., Dec. 16, 1992, Knoxville); *State v. Pam Wiseman,* No. 89–263–III, 1990 WL 44050 (Tenn.Crim. App., April 18, 1990, Nashville).

**6.** We recognize that, effective July 1, 1996, Tenn. Code Ann. § 40–35–104(c)(2) was amended to include the following sentencing alternative: "Payment of restitution to the victim or victims either alone or in addition to any other sentence authorized by this subsection." This statutory authorization for restitution as a sentencing alternative was not available at the time of the appellant's sentencing, and it does not, therefore, affect our holding in this opinion.

islature's omission of a reference to a sentence of confinement in these provisions is therefore deemed intentional and significant. *State v. Harkins,* 811 S.W.2d at 81.

Moreover, this interpretation is consistent with the sentencing alternatives authorized by the Legislature. Tenn.Code Ann. § 40–35–104(c). The Legislature expressly authorized a sentence of restitution as part of a term of supervised probation. Tenn.Code Ann. § 40–35–104(c)(2). It omitted any reference to a sentence involving restitution as part of a term of confinement.

In applying these rules of statutory construction, we conclude that the Legislature intended to limit restitution to defendants placed on probation. *State v. Harkins,* 811 S.W.2d at 82. This Court cannot affirm a sentence that is not expressly authorized by the Legislature. *See* Tenn.Code Ann. § 40–35–104(c). Because there was no other authority under which courts may impose restitution as part of a custodial sentence, we must conclude, as the State of Tennessee concedes,[7] that the trial court did not have the authority to impose restitution in this case.

We note that a number of other jurisdictions agree that the limits of punishment are set by the Legislature and that no punishment may be imposed without statutory authority. *Garski v. State,* 75 Wis.2d 62, 248 N.W.2d 425 (1977); *see also People v. Ondrey,* 32 Ill.App.3d 73, 335 N.E.2d 531 (1975); *State v. Wright,* 156 N.J.Super. 559, 384 A.2d 199 (1978); *Spannuth v. State,* 70 Wis.2d 362, 234 N.W.2d 79 (1975). These decisions stand for the proposition that sentencing courts are not permitted to exceed the penalty specifically set forth by the legislature by imposing additional conditions such as restitution.[8] As the Wisconsin Supreme Court said in *Spannuth,.*

No statute [ ] allows the trial court to impose any other conditions, no matter how 'reasonable and appropriate' they appear, when the statutory penalty rather than probation is chosen. The evident purpose of the legislature is that each defined crime would have a proscribed [sic] maximum punishment, which may not be exceeded by the courts of this state. It is a well established proposition in our system of separate branches of government that the authority to punish is a matter for the legislature.

*Spannuth v. State,* 234 N.W.2d at 82 (citations omitted).

To summarize, the Tennessee Legislature has expressly authorized sentences requiring defendants who are placed on probation to make restitution and there is no other authority under which courts may impose restitution as part of a sentence of incarceration. We conclude, therefore, that restitution may only be imposed as a condition of a sentence of probation.

### CONCLUSION

We conclude that the trial court properly applied the purposes and considerations of sentencing as outlined in *State v. Ashby, supra,* and did not err in denying the defendant probation. We further conclude that the trial court did not have the statutory authority to order the payment of restitution as part of the defendant's sentence of confinement. Accordingly, the judgment of the Court of Criminal Appeals is affirmed.

BIRCH, C.J., and DROWOTA and REID, JJ., concur.

---

7. In making this concession in its supplemental brief, the State abandoned the argument, which it had raised in a petition to rehear with the Court of Criminal Appeals, that Tenn.Code Ann. § 40–20–116 authorized restitution in this case. This statute provides in part that "[w]henever a felon is convicted of stealing or feloniously taking or receiving property, or defrauding another thereof, the jury shall ascertain the value of such property, ... and the court shall ... order the restitution of the property, and, in case this cannot be done, that the party aggrieved recover the value assessed against the prisoner...." The State now concedes that the statute does not expressly apply to the offense of vandalism.

8. Two states provide that an order of restitution is enforceable during imprisonment if a defendant has sufficient assets to pay all or part of the amount ordered at the time of sentencing. Miss. Code Ann. § 99–37–5 (1995); Or.Rev.Stat. § 161.675(1) (1995).